UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO HUERTA RODRIGUEZ,

        Petitioner,

                                       CASE NO. 2:08-CV-13263

   v.                           JUDGE GEORGE CARAM STEEH

                                     MAGISTRATE JUDGE PAUL KOMIVES

GREG McQUIGGIN

        Respondent.

_____/

**REPORT AND RECOMMENDATION ON RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT (docket #7)**

I.    RECOMMENDATION: The Court should conclude that petitioner's application for the writ

of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d).

Accordingly, the Court should grant respondent's motion for summary judgment (docket #7).

II.    REPORT:

A.    *Procedural Background*

        Petitioner Mario Huerta Rodriguez is a state prisoner, currently confined at the Straits

Correctional Facility in Kincheloe, Michigan.  Petitioner is serving a sentence of 25-50 years'

imprisonment imposed as a result of his 1999 state court convictions for felonious assault, assault

with intent to commit murder, carrying a firearm with unlawful intent, and possession of a firearm

during the commission of a felony. Petitioner's application and the state court record reveal the

following time line of the state court proceedings:

       •     Petitioner was convicted on May 14, 1999, and was sentenced on June 14, 1999, in
            the St. Clair County Circuit Court.

       •     Petitioner filed a delayed application for leave to appeal in the Michigan Court of
            Appeals.  The court granted his application for leave to appeal, but rejected his

claims and affirmed his conviction on February 23, 2003. *See People v. Rodriguez*, No. 227863, 2003 WL 550012 (Mich. Ct. App. Feb. 23, 2003).

- Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The supreme court denied petitioner's application in a standard order on July 28, 2003. *See People v. Rodriguez*, 469 Mich. 864, 666 N.W.2d 673 (2003).

- Petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508 on April 9, 2004. The trial court denied the motion on February 25, 2005.

- Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, which was denied in a standard order on October 20, 2005. *See People v. Rodriguez*, No. 261956 (Mich. Ct. App. Oct. 20, 2005).

- Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied in a standard order on May, 2006. *See People v. Rodriguez*, 475 Mich. 867, 714 N.W.2d 303 (2007).

- On August 18, 2006, petitioner filed a second postconviction motion for relief from judgment in the trial court, raising a claim challenging his sentence under *Blakely v. Washington*, 530 U.S. 296 (2004). The trial court denied the motion on the merits on August 30, 2006.

- On October 15, 2007, the Michigan Court of Appeals dismissed petitioner's appeal for lack of jurisdiction, concluding that petitioner's motion was a second motion prohibited by MICH. CT. R. 6.502(G). *See People v. Rodriguez*, No. 280243 (Mich. Ct. App. Oct. 15, 2007).

- On April 28, 2008, the Michigan Supreme Court denied petitioner's application for leave to appeal on the same basis. *See People v. Rodriguez*, 480 Mich. 1186, 747 N.W.2d 265 (2008).

On July 29, 2008, petitioner, through counsel, filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. As grounds for the writ, petitioner raises claims of ineffective assistance of counsel, denial of the right to present a defense, and prosecutorial misconduct. Respondent filed a motion for summary judgment on February 23, 2009, arguing that petitioner's habeas application is untimely. Petitioner filed a response to the motion on March 8, 2009. Petitioner argues that his application is timely, or if not then he is entitled to equitable tolling. For

2

the reasons that follow, the Court should grant respondent's motion for summary judgment.

B.      *Timeliness Under § 2244(d)*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[1]

As the language of the statute indicates, there are four possible dates on which the limitations period may begin to run. Petitioner does not assert that any provision of § 2244(d)(1) other than default starting provision of subparagraph (A) applies. Under subparagraph (A) of § 2244(d),

---

[1]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
>
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, the Michigan Supreme Court denied petitioner's application for leave to appeal on July 28, 2003, and his conviction became final 90 days later when his time for seeking *certiorari* in the United States Supreme Court expired. Thus, the limitations began to run on October 27, 2003, and expired one year later, on October 27, 2003, absent any tolling. Because petitioner did not file his petition until July 29, 2008, it is barred by the statute of limitations unless the limitations period was tolled for any reason.

Pursuant to the provisions of § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with

4

respect to the pertinent judgment or claim is pending[.]"  Petitioner's first motion for relief from

judgment was filed in the trial court on April 9, 2004.  At this time, 164 days had elapsed on the

limitations clock.  The clock recommenced on May 31, 2006, the day following the Michigan

Supreme Court's denied of his application for leave to appeal.[2]

The question presented by the parties is whether the limitations period was tolled by the

filing of petitioner's second motion for relief from judgment.  Respondent contends that, because

this second motion was prohibited by Rule 6.502(G), it was not "properly filed" under § 2244(d)(2)

and thus cannot toll the limitations period.  Under this view, petitioner's limitations clock expired

201 days after the Michigan Supreme Court denied petitioner's application for leave to appeal with

respect to the first motion for relief from judgment, or on December 18, 2006.  Because petitioner's

habeas application was not filed until July 29, 2008, his application is untimely by over 19 months.

Petitioner argues on the contrary that his second motion, even if barred by Rule 6.502(G), was

"properly filed" under § 2244(d)(2).  Under this view, the limitations clock ran from May 31, 2006,

until the filing of his second motion on August 18, 2006.  During this time, an additional 80 days

elapsed, bringing the total elapsed time to 224 days and leaving 141 days remaining on the

limitations clock.  The limitations period commenced again when the Michigan Supreme Court

denied his application for leave to appeal on April 28, 2008.  Petitioner's habeas application was

filed on July 29, 2008, using only an additional 92 of the 141 days remaining on the limitations

---

[2]The clock did not restart on the date of the Michigan Supreme Court's denial because, in computing the time period in the statute of limitations, the Court must "[e]xclude the day of the act, event, or default that begins the period."  FED. R. CIV. P. 6(a)(1).  Further, contrary to petitioner's argument, because a petition for *certiorari* in the United States Supreme Court is not "an application for *State* post conviction . . . review" under § 2244(d)(2) (emphasis added), *see Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), petitioner is not entitled to tolling under § 2244(d)(2) for the 90-day period in which he could have sought *certiorari* in the Supreme Court.  *See Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007).

clock.  Thus, petitioner argues, his application is timely.

The Judges of the Michigan federal courts that have considered whether a second motion for relief from judgment rejected under Rule 6.502(G) is "properly filed" have reached conflicting decisions, but with little analysis of the issue.  *Compare Smith v. Berghuis*, No. 07-14140, 2008 WL 2357696, at *2 (E.D. Mich. June 9, 2008) (Duggan, J.) (motion barred by Rule 6.502(G) is not "properly filed" and does not toll the limitations period), *Raines v. Berghuis*, No. 07-10605, 2008 WL 2157049, at *4 (E.D. Mich. May 22, 2008) (Rosen, J.) (same), *Smith v. Berghuis*, No. 1:07-CV-1179, 2008 WL 724166, at *6 (W.D. Mich. Mar. 17, 2008) (same), *and Mardenli v. Berghuis*, No. 1:07-CV-1078, 2008 WL 696600, at *5 n.3 (W.D. Mich. Mar. 13, 2008) (same), *with Christini v. McKee*, No. 01-CV-74483, 2003 WL 21817823, at *3 (E.D. Mich. July 9, 2003) (reaching opposite conclusion), *and Brown v. Burt*, 224 F. Supp. 2d 1152, 1155-56 (E.D. Mich. 2002) (Tarnow, J.). However, a review of the Supreme Court's decisions interpreting the "properly filed" language supports respondent's view.

In *Artuz v. Bennett*, 531 U.S. 4 (2000), the Court explained that under § 2244(d)(2), "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement in the official record.  And an application is '*properly filed*' when its delivery and acceptance are in compliance with the applicable rules governing filings."  *Id*. at 8 (emphasis in original) (citations omitted).  The Court further explained that the rules governing filings "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee."  *Id*. Specifically, the Court held rejected the State's argument that a state postconviction application is not properly filed "unless it complies will all mandatory state-law procedural requirements that

6

would bar review of the merits of the application," *id.*, explaining that "in common usage, the question whether an application has been 'properly filed' is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar."  *Id.* at 9 (emphasis in original).  The question is whether the state rule "purports to set forth a condition to filing, as opposed to a condition to obtaining relief."  *Id.* at 11.

In *Pace v. Diguglielmo*, 544 U.S. 408 (2005), the Court applied this rule to a Pennsylvania rule which required state postconviction petitions to be filed within one year of the conviction becoming final, with three exceptions.  The Court concluded that an untimely state postconviction motion is not "properly filed" under § 2244(d)(2) and thus does not toll the limitations period.  The Court explained that "[i]n common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception."  *Id.* at 413.  More explicitly, the Court stated that "[w]hen a postconviction petition is untimely under state law, 'that is the end of the matter' for purposes of § 2244(d)(2)."  *Id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).  Distinguishing its prior decision in *Artuz*, the Court explained that "[f]or the purposes of determining what are 'filing' conditions, there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of 'rule of decision' procedural bars at issue in *Artuz*, which go to the ability to obtain relief."  *Id.* at 417.  The Court concluded that "it must be the case that a petition that cannot even be initiated or considered due to the failure to include a timely claim is not 'properly filed.'"  *Id.*

The Michigan rule barring second or successive motions for relief from judgment is more akin to the state timeliness rule considered in *Pace* than the ordinary procedural bar rules considered

7

in *Artuz*. The Michigan rule provides:

> (1) Except as provided in subrule (G)(2), regardless of whether a defendant
> has previously filed a motion for relief from judgment, after August 1, 1995, one and
> only one motion for relief from judgment may be filed with regard to a conviction.
> The court shall return without filing any successive motions for relief from judgment.
> A defendant may not appeal the denial or rejection of a successive motion.
>
> (2) A defendant may file a second or subsequent motion based on a
> retroactive change in law that occurred after the first motion for relief from judgment
> or a claim of new evidence that was not discovered before the first such motion. The
> clerk shall refer a successive motion that asserts that one of these exceptions is
> applicable to the judge to whom the case is assigned for a determination whether the
> motion is within one of the exceptions.

MICH. CT. R. 6.502(G). This rule does set forth "a condition to obtaining relief," *Artuz*, 531 U.S. at 11, as the procedural rules at issue in *Artuz*. The "condition to obtaining relief" procedural default rule regarding claims not raised in a prior motion for relief from judgment is set forth in Rule 6.508(D)(3). Rather, Rule 6.502(G) "purports to set forth a condition to filing." *Artuz*, 531 U.S. at 11. The rule, by its terms, simply prohibits the filing of a second motion for relief from judgment. Thus, like the timeliness rule considered in *Pace*, the rule "go[es] to the very initiation of a" second motion. *Pace*, 544 U.S. at 417. As the Court explained in *Pace*, "it must be the case that a [motion] that cannot even be initiated or considered . . . is not 'properly filed.'" *Id*. Because Rule 6.502(G) sets forth a condition to filing, rather than merely a procedural bar to relief, the Court should conclude that a second motion rejected under Rule 6.502(G) does not toll the limitations period. *See Powell v. Davis*, 415 F.3d 722, 726-27 (7th Cir. 2005) ("Because an unauthorized successive petition is not considered 'properly filed' under Indiana law, the one-year limit was not extended under § 2244(d)(2)."). Thus, the Court should conclude that petitioner's second motion for relief from judgment did not toll the limitations period, and that his habeas application is therefore untimely.

This conclusion is not altered by the fact that petitioner purported to base his claim on the

8

a new rule of law, namely the rule set forth in *Blakely*.  As *Pace* makes clear, the fact that Rule 6.502(G) contains exceptions set forth in paragraph (G)(2) to the bar on second motions is irrelevant if the motion does not fit within those exceptions.  *See Pace*, 544 U.S. at 413.  The Michigan Court of Appeals, in dismissing petitioner's appeal on the basis of Rule 6.502(G), concluding that the exceptions set forth in (G)(2) were not satisfied.  Regardless of the correctness of this ruling, this Court has "no authority to second-guess a ruling based on state law."  *Powell*, 415 F.3d at 726 (citing *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003)).  Further, even if this determination were subject to review by this Court, petitioner cannot show that his second motion did, in fact, meet the exception set forth in Rule 6.502(G)(2).[3]  The Rule 6.502(G) exception allows a second motion which is "based on a retroactive change in law that occurred after the first motion for relief from judgment."  MICH. CT. R. 6.502(G)(2).  Petitioner's second motion did not satisfy this rule because, although *Blakely* represents a change in the law, it is not retroactive to cases on collateral review. *Hicks v. United States*, 258 Fed. Appx. 850, 854 (6th Cir. 2007) ("It is soundly established that *Blakely* and *Booker* do not apply retroactively to cases on collateral review.") (citing *Valentine v. United States*, 488 F.3d 305, 331 (6th Cir. 2007); *United States v. Saikaly*, 424 F.3d 514, 517 (6th Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 863 (6th Cir. 2005)).  Further, *Blakely* does

---

[3]Respondent argues that the Rule 6.502(G)(2) exception was not available to petitioner because *Blakely* did not represent a "change in the law," but merely an application of the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The federal courts have uniformly rejected this view, concluding that *Blakely* represents a new rule not anticipated by *Apprendi*.  *See Schardt v. Payne*, 414 U.S. 1025, 1035 (9th Cir. 2005); *Lloyd v. United States*, 407 F.3d 608, 613 (3d Cir. 2005); *Humphress v. United States*, 398 F.3d 855, 861 (6th Cir. 2005).  Respondent also argues that petitioner's claim was not based on *Blakely* because that decision is inapplicable to indeterminate sentencing schemes like Michigan's sentencing scheme.  However, the fact that petitioner is not entitled to relief under the *Blakely* rule does not mean that the claim asserted in petitioner's second motion was not based on that rule.  Despite the lack of merit of these arguments, petitioner's second motion failed to satisfy Rule 6.502(G)(2) for the reasons explained above.

not represent a change in the law "that occurred after the first motion for relief from judgment."
*Blakely* was decided on June 24, 2004. Although petitioner's first motion was filed on April 9,
2004, prior to *Blakely*, it was not decided by the trial court until February 25, 2005, well after that
decision. Petitioner did not attempt to amend his first motion to assert a *Blakely* claim, although he
could have done so. *See* MICH. CT. R. 6.502(F) ("The court may permit the defendant to amend or
supplement the motion at any time."). Nor did petitioner attempt to assert his *Blakely* claim on
appeal from the denial of his first motion for relief from judgment, although that claim was available
to him at the time of the appeal. Because *Blakely* is not retroactive and was not decided after the
first motion for relief from judgment, petitioner's second motion for relief from judgment did not
satisfy the exception contained in Rule 6.502(G)(2). And because a motion failing to satisfy Rule
6.502(G) is not "properly filed," petitioner's second motion did not toll the limitations period under
§ 2244(d)(2).[4] Thus, the Court should conclude that petitioner's application is untimely under §
2244(d).

C.      *Equitable Tolling*

        Petitioner also contends that he is entitled to equitable tolling because he acted diligently and
because he is actually innocent. The Court should conclude that petitioner is not entitled to
equitable tolling.

        1.      *Equitable Tolling Based on Diligence*

        Petitioner contends that even if the Court concludes that the application is untimely under

---

[4]The fact that the circuit court clerk accepted petitioner's second motion for filing and the trial
court rejected the motion on the merits rather than under Rule 6.502(G), while it may provide a basis
for equitable tolling, is irrelevant to the statutory tolling issue under § 2244(d)(2). *See Artuz*, 531 U.S.
at 8 (emphasis in original) ("If, for example, an application is erroneously accepted by the clerk of a
court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be *pending*, but
not *properly filed*.").

10

§ 2244(d), he is entitled to equitable tolling of the limitations period because he acted diligently in attempting to pursue his claims, and some delays were caused by his retained attorney's failure to file the first motion for relief from judgment.   To be entitled to equitable tolling of the limitations period, petitioner "must show '(1) that he had been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005)).   The very existence of a statute of limitations presupposes that meritorious claims will not be considered when they are not diligently pursued. *See Steele v. United States*, 599 F.2d 823, 828-29 (7th Cir. 1979). For this reason, "[t]he tolling exception is not an open-ended invitation to the courts to disregard limitation periods simply because they bar what may be an otherwise meritorious cause." *School Dist. of the City of Allentown v. Marshall*, 657 F.2d 16, 20 (3d Cir. 1981).   Thus, neither the importance nor the merit of petitioner's constitutional claims provides a basis for equitably tolling the limitations period. *See Rouse v. Lee*, 339 F.3d 238, 251-52 (4th Cir. 2003) (en banc).   "The petitioner bears the burden of establishing that he is entitled to equitable tolling." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).

Even assuming, as he argues, that petitioner was diligent in pursing his claims in the state courts, this alone does not entitle petitioner to equitable tolling of the limitations period.   Under *Lawrence*, petitioner must also show that some extraordinary circumstance stood in his way which prevented him from timely filing his petition.   His post-conviction counsel's failure to file the first motion for relief from judgment does not constitute such an extraordinary circumstance.   As the courts of appeals have explained, attorney error or negligence generally does not constitute the type of extraordinary circumstance justifying equitable tolling of the habeas limitations period.   *See*

11

*Rouse v. Lee*, 339 F.3d 238, 248-49 (4th Cir. 2003) (citing cases from Second, Third, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits); *Jurado v. Burt*, 337 F.3d 683, 644-45 (6th Cir. 2003); *Elliott v. DeWitt*, 10 Fed. Appx. 311, 313 (6th Cir. 2001); *see also*, *Lawrence*, 549 U.S. at 336-37 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). As the Supreme Court has explained, apart from proceedings governed by the Sixth Amendment right to counsel, "the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (internal quotation omitted); *see also*, *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001) ("Unfortunately, many clients, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands."). More specifically, the courts have found that an attorney's delay in filing a state post-conviction motion or federal habeas petition does not warrant equitable tolling. *See Stanley v. Ward*, 121 Fed. Appx. 332, 335 (10th Cir. 2005); *Schlueter v. Varner*, 384 F.3d 69, 76-77 (3d Cir. 2004); *Boyd v. Robinson*, 61 Fed. Appx. 928, 930 (6th Cir. 2003); *M.P. v. Perlman*, 269 F. Supp. 2d 36, 39 (E.D.N.Y. 2003). Nor does his *pro se* status at the time of the first motion for relief from judgment provide a basis for equitable tolling. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (Rosen, J.).

The trial court's acceptance of petitioner's second motion for relief from judgment and rejection of that motion on the merits may provide a basis for equitable tolling. Petitioner reasonably could have relied on those actions as a determination by the state court that his second

12

postconviction motion was not barred by Rule 6.502(G), and thus would toll the limitations period under § 2244(d)(2). Such tolling would end, however, when the Michigan Court of Appeals dismissed his appeal for lack of jurisdiction under Rule 6.502(G). Because the rule provides that an appeal is not available for a rejection or denial of a motion under Rule 6.502(G), petitioner could not have reasonably concluded at that point that a further appeal to the Michigan Supreme Court would still toll the limitations period. Even giving petitioner the benefit of tolling for the period from the filing of his second motion on August 18, 2006, until the court of appeals's dismissal of his appeal on October 15, 2007, petitioner's application is still untimely. As noted above, at the time petitioner filed his second motion 224 days had elapsed and 141 days remained on the limitations clock. Assuming the clock was stopped from August 18, 2006, until October 15, 2007, the clock began to run again on October 16, 2007, and the remaining 141 days elapsed on March 6, 2008. Thus, petitioner's July 29, 2008, habeas application was untimely by over four months, even if the limitation period is equitably tolled based on the trial court's acceptance of his second motion for relief from judgment. Because petitioner has failed to show any extraordinary circumstance which prevented him from timely filing his habeas application, the Court should conclude that petitioner is not entitled to equitable tolling.

      2.    *Actual Innocence*

      Petitioner also contends that he is entitled to equitable tolling because he is actually innocent. The Sixth Circuit has held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 598-602 (6th Cir. 2005). In order to be entitled to the actual innocence exception, a petitioner must present "new and reliable evidence that was not

13

presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). *See generally*, *Souter*, 395 F.3d at 589-90.

The facts underlying petitioner's conviction were briefly summarized by the Michigan Court of Appeals:

> The incident giving rise to this case occurred over a three-hour period in the early morning hours of March 30, 1998. Police responded to a domestic dispute at a residence where shots had been fired. Upon arrival, police found defendant outside the house holding a rifle. Defendant failed to comply with repeated police orders to drop his weapon. Defendant fled into a wooded area. Shortly after 3:00 a.m., defendant emerged from the woods and shots were fired. According to prosecution witnesses, defendant pointed his rifle at two Michigan State Police troopers and fired one round. The troopers returned fire causing defendant to sustain nine gunshot wounds. The defense's theory of the case was that defendant did not fire at the troopers and that they fired at him without cause.

*Rodriguez*, 2003 WL 550012, at *1. Rejecting petitioner's sufficiency of the evidence claim, the court explained:

14

The prosecution presented sufficient evidence to support defendant's convictions. Numerous witnesses testified to seeing defendant carrying a rifle. He continued to carry it after police officers ordered him several times to drop his weapon. Witnesses testified to seeing defendant point a rifle at one of the woman present at the house. Troopers Michael Bunk and Toby Marshall testified consistently that defendant fired his rifle in their direction. They perceived something pass between them when they were approximately three feet apart. Several other police officers testified to hearing a single shot that was distinctively different from the shots that followed. When defendant was apprehended, he told the troopers that if he had had the chance, he would have killed them all. Viewed in the light most favorable to the prosecution, a rational jury could find that the elements of felonious assault, assault with intent to murder, carrying a firearm with unlawful intent, and felony-firearm were proven beyond a reasonable doubt.

*Id*. at *8.

In support of his actual innocence claim, petitioner relies on the report of firearms examiner David E. Balash, a former Detective-Lieutenant with the Michigan State Police in charge of the Firearms, Tool Mark and Explosive Unit at the Michigan State Police's Northville Laboratory. The substantive portion of Mr. Balash's report provides, in its entirety:

COMMENTS AND OBSERVATIONS

On 3/30/98 Mario Huerta Rodriguez was observed to have fired two (2) shots from a Savage .30-06 bolt action rifle in or near the house located at 15575 Almont Road, Allenton, Michigan. Relatives and Mr. Rodriguez confirm these firings.

St. Clair County Deputy Sheriff's [sic] Buckley and Terpenning observe Mr. Rodriguez point a rifle at or in the direction of a female resident of the house. The pointing of the weapon was from the hip of Mr. Rodriguez. The deputies ordered Mr. Rodriguez to drop the weapon; he turned and fled the scene. No shots were fired.

Mr. Rodriguez is observed much later returning towards the residence by Michigan State Troopers Marshall and Bunk. Trooper Marshal[l] is armed with a .223 caliber H & K rifle and his duty sidearm, a 9mm Sig Sauer pistol. Trooper Bunk is armed with a Remington 870 shotgun and his duty sidearm, a 9mm Sig Sauer pistol. Trooper Marshal[l] is slightly behind and to the right side of Trooper Bunk. Both were on one knee when Mr. Rodriguez was observed returning towards the residence and both went prone. As Mr. Rodriguez approached to within approximately 15 feet (15 yards in the two trooper's [sic] report) of the trooper's [sic] position, Trooper Bunk yelled "police drop your weapon" and Mr. Rodriguez stopped and reported lowered his rifle from basically a port arms position to a level to the ground position pointed in the trooper's direction. Trooper Bunk then yelled

15

"Policia drop you weapon" at which time the shooting began.

Trooper Marshall armed with the .223 caliber rifle (apparently with the muzzle pointed in front of him at Mr. Rodriguez) states that he saw Mr. Rodriguez fire his rifle at the officer's [sic], he saw the muzzle blast coming right at him.

Trooper Bunk states that he hears a boom and that "apparently" Mr. Rodriguez fired at him and he sees the muzzle blast coming right at him. Trooper Bunk also states that the muzzle blast "did not appear to be over his head"; however at the preliminary examination of Mr. Rodriguez, Trooper Bunk states that Mr. Rodriguez fired a shot at them. This statement was much more positive than the one recorded in the St. Clair Co. Sheriff's Report.

Mr. Rodriguez tells investigators on 4/6/98 that the rifle was empty when he pointed the weapon at the female near the house and that he placed one cartridge in the firearm and chambered this round. Mr. Rodriguez had 8 - .30-06 cartridges on his person that evening. The weapon was found with one cartridge in the chamber and no cartridges in the magazine.

Sheriff Dan Lane is attributed with saying he first heard a loud bang from a hi-powered [sic] rifle, followed by a few shotgun blasts and then numerous small caliber ammunition such as 9mm in the St. Clair Report. Sheriff Lane's statement in D/Sgt. Haggerty's report states he heard a single loud bang, "similar" to a .30-06 shot, and then a volley of shots.

Officers from the Michigan State Police, St. Clair County Sheriff and 2 Michigan State Police Forensic Laboratories Firearms Specialists searched the scene on at least 4 different occasions, twice using metal detectors, and no .30-06 caliber fired cartridge case was ever recovered. These searches were over a period of weeks and not all the officers were present for all of the searches.

Neither trooper indicated that they saw Mr. Rodriguez rack or function the rifle during the shooting event. Neither trooper mentions that they observed Mr. Rodriguez make a throwing motion during the event.

I did not note where anyone asked the trooper's [sic] how they had positioned their respective weapons just prior to the shooting. My assumption would be that while lying prone, their weapons were pointed at the suspect and the muzzles were in front of their faces aimed in the direction of the suspect. I would categorize this position as a normal ready to fire position.

During the investigation, no one finds any evidence of a shot being fired from Mr. Rodriguez's weapon. The background buildings and area were examined for bullet strikes with none being found.

A bolt action rifle is not the easiest firearm to function under ideal conditions let alone when moving (running) to avoid gunfire. The ability to remove and capture a fired cartridge case under these conditions and dispose of that fired cartridge case would be quite difficult.

OPINIONS AND CONCLUSIONS

Muzzle flash is a known phenomenon and is quite visible in dark shooting

16

situations, however to ascertain direction from a muzzle blast signature one would have to view this from the side not from the front or rear.

In the opinion of the undersigned it is not possible to identify one high power rifle report from that of another high power rifle report when only a single report is heard. This examiner could not distinguish the reports from the .30-06 and the .223 rifles on the shooting range when reviewing the videotape of that testing. The firing of the 12 gauge shotgun and the 9mm pistol cartridges were distinguishable from those of the 2 rifles involved in this case.

The undersigned is of the opinion that if a fired .30-06 cartridge case was available to be found at the shooting scene, the quantity and expertise of those investigators looking for this fired cartridge case on at least 4 different occasions would have found this case. The undersigned is of the opinion that no case was found because the .30-06 rifle was NOT FIRED at the troopers. To believe that Mr. Rodriguez intentionally disposed of the fired cartridge case, one would have to believe that Mr. Rodriguez intentionally fired at the troopers, then realized what he had done and during a fusillade of shots being fired at him and not knowing if he would survive, extracted and caught the fired cartridge case and threw it either into the pond or deep into heavy cover area so as not to give the appearance that he in fact fired his weapon. I find this scenario to be totally ludicrous. It should also be noted that the troopers did not notice Mr. Rodriguez functioning the rifle, let alone see him throw something.

Pet., Ex. 5, Report of David E. Balash, at 2-4.

Viewing the evidence at trial and Balash's report, it was undisputed that petitioner had pointed a rifle at the initial victim and that he was armed with the rifle that was loaded with at least one bullet which had been chambered at the time the State Troopers confronted him. The police witnesses testified that they saw a muzzle flash aimed towards them from the rifle or heard a report from the rifle prior to the Troopers opening fire on petitioner. Balash disputes the police testimony based on his opinions that (a) the direction of the muzzle blast could not be determined by the Troopers laying in front of petitioner, (b) the other police witnesses could not distinguish between the sound of petitioner's .30-06 rifle and the Troopers' rifles, and (c) if petitioner had fired, the spent shell casing would have been found either in the rifle or at the scene.

Balash's report does not provide the type of exculpatory scientific or physical evidence

which establishes that petitioner did not fire upon the Troopers.  Regardless of whether the police could determine the precise direction of the muzzle blast or distinguish between the sounds of the different rifles, the two Troopers testified that petitioner pointed the gun in their direction and fired. Balash's opinion that the other officers on the scene could not distinguish between the sounds of the rifles does not call into question the testimony of the Troopers, who were a short distance from petitioner and observing him, that petitioner fired his rifle before they shot any of their weapons. Balash's opinion that if petitioner had fired, it would have been difficult for petitioner to remove the spent casing from the rifle is far from certain evidence that petitioner did not do so.  Further, Balash's opinion that if petitioner had disposed of a casing it would have been found is nothing more than speculation not based on his expertise, particularly in light of the fact that it does not appear that Balash himself visited the scene of the shooting.  At best, Balash's testimony at trial may have raised some credibility issues regarding the testifying police witnesses.  His report does not, however, establish that petitioner did not in fact fire the weapon at the officers.  Thus, petitioner has failed to provide new, reliable evidence which establishes his actual innocence.  *Cf. Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084-85 (9th Cir. 2001).

Further, even if Balash's report were sufficient to establish that petitioner did not fire his rifle at the officers, this would be insufficient to establish petitioner's actual innocence.  Whether or not petitioner fired the gun, he could still have been convicted of assaulting the Troopers with the intent to murder them.  Under Michigan law, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225

18

Mich. App. 103, 570 N.W.2d 146, 150 (1997)).  As with other mental-state elements, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

Here, Balash's report does not call into question that police witnesses' testimony that petitioner pointed a loaded gun at them.  Under Michigan law, "[a]n assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery."  *People v. Nickens*, 470 Mich. 622, 628, 685 N.W.2d 657, 661 (2004) (internal quotation omitted); *see also*, *People v. Reeves*, 458 Mich. 236, 240-41, 580 N.W.2d 433, 435-36 (1998).  The testimony that petitioner pointed a loaded gun at the Troopers was sufficient to establish the assault element, even if petitioner did not actually fire the gun.  *See Reeves*, 458 Mich. at 245, 580 N.W.2d at 437 (placing hand in paper bag and pointing it at victim, suggesting that defendant was pointing gun at victim, sufficient to establish assault).  Further, even if petitioner did not actually fire at the Troopers, his intent to kill them could be inferred from his apparent attempt to do so and his statement to the officers that, if he could have done so, he would have killed them all.  The fact–if it is a fact–that the Troopers fired on petitioner before he could carry out his intent calls into question neither the existence of an assault nor the existence of an intent to kill on the part of petitioner at the time of the assault.  *See People v. Davis*, 216 Mich. App. 47, 53, 549 N.W.2d 1, 4 (1996) (evidence sufficient to prove assault with intent to commit murder where victim testified that "defendant pointed a pistol at him, warned him not to come any closer or he would kill him, and pulled the trigger several times (but no bullets fired)."); *People v. Lugo*, 214 Mich. App. 699, 711, 542 N.W.2d 921, 927 (1995) (evidence sufficient to submit assault with

19

intent to commit murder charge to jury where defendant seized officer's gun during a struggle and pushed it into the officer's abdomen, even though the officer was able to knock the gun away before the defendant could fire). Thus, even if Balash's report constitutes new, reliable evidence regarding petitioner's firing of the gun, it does not provide evidence establishing petitioner's factual innocence of assault with intent to commit murder. Accordingly, the Court should conclude that petitioner is not entitled to consideration of his time-barred claims on the basis of his actual innocence.

D.      *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions, and that petitioner is not entitled to consideration of his claims on the basis of actual innocence. Accordingly, the Court should grant respondent's motion to for summary judgment and should dismiss the petition.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

20

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/6/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail and on August 6, 2009.

s/Eddrey Butts
Case Manager